UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PORT COMMISSION RED RIVER
PARISH

CIVIL ACTION NO. 07-0416

versus

JUDGE STAGG

HEADWATERS RESOURCES, INC.,
ET AL

MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

The Red River Parish Port Commission (the "Port") filed a Petition for Declaratory Judgment in state court seeking a declaration of its rights and obligations under two contracts.  The first contract is with Headwaters Resources, Inc. ("Headwaters") and reflects an agreement for the construction and long-term use of a barge loading facility (sometimes referred to by the parties as a fly ash terminal) at the Red River Parish port.  The second contract is between the Port and the Red River Waterway Commission ("RRWC") and regards the RRWC's commitment to provide the Port with funds for the construction project.

Headwaters removed the case based on an assertion of diversity jurisdiction. Headwaters is incorporated in and has its principal place of business in Utah, so it is diverse in citizenship from the Port, which is a Louisiana citizen.  There is, however, no diversity on the face of the pleadings because the plaintiff Port and defendant RRWC share Louisiana citizenship. Headwaters urged in its Notice of Removal that the citizenship of RRWC should be ignored because the RRWC was fraudulently or improperly joined as a defendant.  The

Port filed a Motion to Remand (Doc. 16) that challenged the improper joinder plea.  It is recommended, for the reasons that follow, that the motion be denied.

**Improper Joinder**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship.  Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff.  That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal.  To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed.  Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit has recently adopted the term "improper joinder" to describe the doctrine, though it took care to note that there is no substantive difference between the two terms.  Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Only the second way is at issue in this case.  That second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant.  Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant. Smallwood, 385 F.3d at 573.  Any ambiguities in state law must be resolved in favor of the plaintiff. Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

But merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not necessarily mean that the joinder of the resident defendant is proper.  The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail.  The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence. Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004).  Headwaters relies on a 12(b)(6)-type attack and does not attempt to challenge the accuracy of any of the allegations by submitting evidence. The Port has submitted some evidence, but it is both improper to consider and insufficient to change the result, as will be discussed below.

**Relevant Facts and Allegations**

The Port was created by the Louisiana legislature and is authorized to regulate commerce and traffic within the area of a river port in Red River Parish, construct or acquire

and administer wharves, docks and landings, and engage in similar activities related to the operation of the port.  The Port may charge fees for its services and has the authority, when authorized by area voters, to levy a property tax.  La. R.S. 34:3166-3172.

The Port entered into a Lease and Operating Agreement ("Lease") with ISG Resources, Inc. (Headwaters later acquired ISG's rights under the Lease).  ISG represented that it had submitted to the Port an executed copy of a contract between CLECO and ISG whereby CLECO agreed to sell to ISG fly ash generated by the Dolet Hills Power Plant.  ISG represented that it had also submitted an executed copy of an agreement by which Ecological Carmelo, Inc. agreed to purchase the fly ash from ISG.  The Port agreed to lease an area to ISG that ISG could use to build a barge loading facility where the fly ash could be loaded for shipment.

The Port also agreed to make available to ISG more than $2,000,000 to reimburse the cost of construction of improvements on the leased premises.  The parties agreed that upon completion of the improvements, ISG would transfer title to all of the improvements to the Port, the Port would reimburse most of the costs of construction, and the Port would continue to lease the entire facility to ISG for several years.  ISG agreed, among many conditions, that during the term of the lease it would use the Port's facility to ship any fly ash it obtained from the Dolet Hills plant that was to be shipped by water.

The facts recited above were taken largely from the terms of the Lease, which is attached to the state court petition. As an exhibit to the pleading, the Lease is a "part thereof

for all purposes." Fed. R. Civ. P. 10(c). That includes 12(b)(6) contests, <u>Ferrer v. Chevron</u> <u>Corp</u>., 484 F.3d 776, 780 (5th Cir. 2007), and improper joinder issues are resolved in a Rule 12(b)(6)-type analysis. The focus now turns to the allegations in the petition itself.

The Port alleges that ISG was "acquired by" Headwaters. Petition, ¶ 3. Headwaters allegedly made false, material representations to the Port with regard to the Lease, which vitiated the Port's consent to the Lease. ¶ 6. Headwaters is also accused of several breaches of the Lease, to an extent that the Lease has been rendered null and void. ¶ 7. Cited examples of breaches include failure to pay rent, the assignment between ISG and Headwaters without required written consent of the Port, failure to ship through the port all fly ash shipped from the Dolet Hills plant, failure to ship a minimum required amount of fly ash, failure to complete the barge loading facility in a timely manner, and changing the design of the barge loading facility without approval. ¶ 8 (the first one; there are two paragraphs in the petition numbered 8).  The Port also alleges that an officer with ISG made written representations about contracts for shipping fly ash, commencement of construction, tonnage that would be shipped, and the like, which representations were learned to be false.  The Port also learned after the Lease was signed that ISG no longer had a long-term contract with Ecological Carmelo.  ¶¶ 8 (the second one) to 11.

Headwaters "mailed Mr. Robert Breedlove, Project Manager, a bill of sale" for the fly ash terminal. The document called for the Port to pay Headwaters more than $2,400,000 pursuant to the reimbursement provisions of the Lease.  The Port alleges that the Lease is null

and void because of the defaults listed above, meaning the Port is not obligated to purchase the improvements.  ¶ 12. The Port adds an alternative allegation that if it is obligated to purchase the improvements from Headwaters, the amount should be offset by Headwaters' obligations to the Port caused by Headwaters' various uncured breaches of the Lease. ¶¶ 12-13.

The above facts and allegations set the stage for consideration of what is really at issue in this improper joinder contest: the Port's naming of RRWC as a defendant.  The principal question before the court is whether Headwaters has demonstrated that there is no reasonable basis for this court to predict that the Port might be able to recover against  (or obtain a declaration adverse to) RRWC. The focus will now turn to the allegations in the petition that regard the RRWC.

The Port alleges that it "entered into a memorandum of cooperative endeavor ("Cooperative Endeavor") with the RRWC in August, 2003." ¶ 4. That paragraph says nothing else about the Cooperative Endeavor, and the agreement is not mentioned again in the petition until Paragraph 14. There, the Port states that the Cooperative Endeavor provided that the RRWC would provide the Port the funds necessary to consummate the commitment the Port made under the Lease.  The Port adds that it has no source of funds sufficient to purchase the improvements made by Headwaters (if it is obligated to do so) unless the RRWC is bound by the Cooperative Endeavor to fund the purchase. ¶ 15.

The Port makes a general assertion that there "is a dispute between plaintiff and both defendants as to the rights, status and obligations" under both the Lease and the Cooperative Endeavor, so that the Port wants a court to declare those matters. ¶ 16.  The prayer of the petition asks that the court declare the Lease void or, in the alternative, that Headwaters' obligations to the Port offset any sums the Port may owe Headwaters.  In the further alternative, the Port asks for judgment against the RRWC holding that the RRWC is indebted to pay the Port any sums that the Port is obligated to pay Headwaters.

A copy of the Cooperative Endeavor was not attached to the petition, but the Port attached a copy to its motion to remand.  No objection was made to consideration of the Cooperative Endeavor. Consideration of the document clarifies the relationship between the RRWC and the Port, but it does not change the result. The document reflects that the Port requested the RRWC's help to induce ISG to build the barge loading facility.  The RRWC represents in the agreement that it is authorized by law to cooperatively assist in developing ports in conjunction with local port commissions and, pursuant to that authority, the RRWC states that it will, subject to several terms and conditions, transfer up to $2,500,000 to the Port in connection with the project.

The Port also attaches to its motion to remand an affidavit from Jerry Glover, its secretary/treasurer.  Mr. Glover testifies that the Port would never have entered into the Lease were it not for the Cooperative Endeavor, because the Port does not have the resources to fund the Lease without the assistance of the RRWC.

Mr. Glover adds that three persons associated with the RRWC have told him that the RRWC "takes the position that the conditions of the Cooperative Endeavor have not been met due not to actions of the PORT, but to the failure to comply and to fulfill representations and promises made by ISG RESOURCES, INC. and/or HEADWATERS RESOURCES, INC." Mr. Glover adds that the Port has named the RRWC a defendant in this suit "to secure funding for whatever may be owed under the [Lease] as was anticipated by the PORT at the time the [Lease] was signed." Headwaters has filed a Motion to Strike (Doc. 21) the affidavit on the grounds that it wrongly attempts to expand the original petition and contains hearsay and speculation. The affidavit should not be considered, and reasons will be provided after the improper joinder analysis.

**Improper Joinder Analysis**

The Port's petition seeks only declaratory relied against the RRWC. Headwaters argues that the Port has not pleaded a justiciable claim against the RRWC that would permit any such relief to be considered. Resolution of the issues will be aided by a review of Louisiana law regarding declaratory judgment actions and improper joinder decisions issued by the Fifth Circuit in similar contexts.

Louisiana has adopted, with some modification, the Uniform Declaratory Judgments Act, which is found at La. C.C.P. arts. 1871-83. It allows courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed." Art. 1871. A person interested under a written contract "may have determined any question of construction

or validity" arising under the contract. Art. 1872. The Articles governing declaratory judgments "are to be liberally construed and administered." Art. 1881.

Despite the apparent breadth of those articles, the Supreme Court of Louisiana requires that a "justiciable controversy" exists between the parties, or a court will lack power to grant declaratory relief. This requirement is designed to avoid deciding abstract, hypothetical, or moot questions. Cases submitted must be "justiciable, ripe for decision and not brought prematurely." Prator v. Caddo Parish, 888 So.2d 812, 815-16 (La. 2004).

The Court admitted in Prator that courts often grapple with "the difficult issue of when a controversy is justiciable as opposed to an abstract question that would result in a merely advisory opinion." Id. at 816. The difference between the two, the Court explained, "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Id., citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 61 S.Ct. 510, 512 (1941). See also Perschall v. State, 697 So.2d 240, 251-53 (La. 1997). The test may be difficult to apply, and ambiguities in state law are resolved in favor of the non-removing party, but that does not mean than any assertion of a declaratory judgment claim will defeat a plea of improper joinder. There must be a basis in the petition for at least an arguably ripe and justiciable controversy.

The Fifth Circuit in Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319 (5th Cir. 2001) addressed an improper joinder argument in the context of a declaratory judgment

action that was removed from a Texas state court.  The Port argues that the decision is distinguished because Texas declaratory judgment law differs from Louisiana law, but both states have enacted the Uniform Act.  The judicial interpretations of the Act in the two states may not be identical on all points, but the rules are close enough that the Fifth Circuit's decision should not be ignored.

Heritage Bank arose from a letter of credit transaction.  Fiberwave obtained the letter of credit from Heritage Bank.  It used the letter to purchase electronics from Redcom, which delivered the goods and made presentment to the bank for payment.  Fiberwave believed the goods it received from Redcom were defective, and it successfully petitioned a Texas court to enjoin the bank from honoring Redcom's presentment.  The bank (Texas citizen) filed a declaratory judgment action in state court against both Redcom (New York citizen) and Fiberwave (Texas citizen) .  Redcom removed the case based on diversity, which required that it assert that Fiberwave was improperly joined.

The bank filed a motion to remand. It argued that it had a proper declaratory judgment act claim against Fiberwave because Fiberwave, the bank's customer, would be liable to the bank for reimbursement *if* the bank had to honor Redcom's presentment under the letter of credit.  The Court noted that a declaratory judgment contest in the principal dispute between the bank and Redcom "cannot order the bank to pay Redcom anything; it merely resolves questions regarding the rights of the parties."  Thus, any obligation of Fiberwave to reimburse the bank would not be triggered by the pending suit.  The Court concluded that the

bank's claim against Fiberwave was not a justiciable controversy because it was contingent on a finding that the bank improperly honored Redcom's presentments.  It concluded: "Thus, even though Fiberwave has an interest in the *outcome*, it has no interest in the current *controversy*."  Heritage Bank, 250 F.3d at 324. The district court's denial of the motion to remand was affirmed. The Port attempts to distinguish the decision on the grounds that the Court relied upon the rationale underlying letters of credit.  The Court did mention that rationale to justify its decision but made clear that it was "[i]n addition" to the reasoning explained above.  Id.

The Fifth Circuit also addressed an improper joinder dispute in the declaratory judgment context in Smith v. BCE, Inc., 225 Fed. Appx. 212 (5th Cir. 2007).  The Court first determined that the plaintiff could not state a claim against the non-diverse defendant for breach of contract because that defendant had assigned its rights in the agreement and received a release from its obligations.  The plaintiff then pointed to his claim for declaratory relief, but the Court reasoned that the declaratory judgment act is a mere procedural device that does not create any substantive rights or causes of action.  The request for declaratory judgment was deemed a theory of recovery predicated upon a cause of action for breach of contract.  Under the circumstances, the declaratory judgment claim was merely theoretical, so the improper joinder plea was upheld and remand was denied. This case demonstrates the need for some viable and actionable dispute to underly the request for declaratory relied, lest the joinder of the declaratory defendant be found improper.

The rules and decisions cited above are helpful in assessing whether there is reasonable basis to predict the Port might be able to obtain declaratory relief against the RRWC in state court.  The most important factor in that decision, however, is the petition that was filed by the Port.  It is that original petition, and not any amendments or post-removal attempts to add to the facts or claims asserted therein, on which this issue must be judged.  Cavallini v. State Farm, 44 F.3d 256, 263-64 (5th Cir. 1995).  (This procedural rule is discussed in more detail under the next heading.)

The petition contains a great deal of allegations against Headwaters.  It also has some mention of the RRWC and the Cooperative Endeavor.  Finally, the petition contains an alternative demand for judgment that the RRWC is indebted to the Port for any amounts the Port may have to pay Headwaters.  What is missing from the petition, however, is any allegation that there is an *actual dispute* between the Port and the RRWC with regard to the terms of the Cooperative Endeavor.  The RRWC may be interested in the outcome of the litigation between the Port and Headwaters, but there is nothing in the petition to suggest that the RRWC is currently party to any actual controversy with the Port.  The Port does not allege that it has made demand on the RRWC for any payment under the Cooperative Endeavor, and the Port does not allege that the RRWC has ever communicated that it intends to deny any payment that may come due under the Cooperative Endeavor. Thus, there is no basis in the petition to believe that the RRWC would not honor the Cooperative Endeavor and pay the Port, without the need for litigation, the amounts the Port may be required to pay

Headwaters under the Lease.  Absent any direct allegation that there is an actual dispute or controversy in that regard, there is no reasonable basis to predict that the Port could currently obtain declaratory relief against the RRWC in state court.  Headwaters has demonstrated that the RRWC was improperly joined, so the Louisiana citizenship of the RRWC may be ignored.

**Motion to Strike**

Little in Mr. Glover's affidavit could benefit the Port in assessing the motion to remand. The only potential help comes from the testimony that the RRWC reportedly "takes the position that the terms of the Cooperative Endeavor have not been met" due to the failures of Headwaters. That line contains at least a hint of an actual conflict that could arise between the Port and the RRWC (if the Port were to be found obligated to pay Headwaters and then turn to the RRWC for funding), something that is absent from the petition. Even so, Mr. Glover does not actually say that the RRWC has said that it will refuse to make any payments that the Port might seek under the Cooperative Endeavor.

Post-removal attempts to amend or supplement the original petition cannot give rise to federal jurisdiction. Cavallini, 44 F.3d at 264.  Also, summary-judgment style evidence may be used in an improper joinder contest to pierce and test the accuracy of the pleadings, but such evidence may not be considered to determine whether a claim has been stated against the non-diverse defendant under a legal theory not alleged in the state court complaint. Cavallini, 44 F.3d at 263.

The Smallwood decision emphasized that the summary inquiry comes into play if a plaintiff *has* stated a claim in his state-court petition "but has misstated or omitted discrete facts that would determine the propriety of joinder." 385 F.3d at 573. "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry ...[that] is appropriate *only* to identify the presence of discrete and undisputed facts that would *preclude* plaintiff's recovery against the in-state defendant." Id. at 573-74 (emphasis added). The use of Mr. Glover's affidavit in a post-removal attempt to bolster or effectively amend the petition is not an appropriate use of summary-judgment material in an improper joinder contest. The motion to strike should be granted.

**Citizenship of the Port**

Headwaters urges at footnote 2 of its Notice of Removal that the Port is not entitled to Eleventh Amendment immunity in federal court because it is not an arm of the state.  The parties have not spoken to that issue further, but if the Port were an arm of the state there would be no diversity jurisdiction "because a state is not a citizen for purposes of diversity jurisdiction" and "state agencies that are the alter ego of the state are not citizens for the purposes of diversity jurisdiction." Texas Department of HCA v. Verex Assur., Inc., 68 F.3d 922, 926 (5th Cir. 1995).  See also Louisiana v. Union Oil Co. of California, 458 F.3d 364, 366 (5th Cir. 2006).  The analysis of state agencies or entities that is used under Eleventh Amendment decisions is "virtually identical" to the analysis for determining citizenship for

diversity purposes.  <u>Tradigrain, Inc. v. Mississippi State Port Authority</u>, 701 F.2d 1131, 1132 (5th Cir. 1983).

Judge Little examined whether the RRWC is an arm of the state for Eleventh Amendment purposes.  He looked at the relevant factors, such as the source of funds, degree of local autonomy, and concern with local as opposed to statewide problems.   After considering those and the other relevant factors, he concluded that the RRWC is not an arm of the state.  <u>Anderson v. Red River Waterway Commission</u>, 16 F. Supp. 2d 682 (W.D. La. 1998).  The Fifth Circuit affirmed in a published decision at 231 F.3rd 211 (5th Cir. 2000). The undersigned has reviewed the statutory framework for the Port.  Considering the relevant factors, the lack of any argument by the parties on the issue, and the guidance of the <u>Anderson</u> case's analysis of a similar entity, the undersigned concludes that the Port is not an arm of the state for diversity purposes.

**Summary Judgment for RRWC**

The undersigned has found that the Port has no reasonable possibility of recovery against the RRWC, so it is appropriate to enter summary judgment dismissing the claims against that defendant. <u>Carriere v. Sears, Roebuck & Co.</u>, 893 F.2d 98, 102 (5th Cir. 1990) ("Because we have already concluded that Sizeler was fraudulently joined, we need not consider appellant's argument on this point further. Summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery."). Raising the prospect of summary judgment in this Report and Recommendation, which

permits a 10-day period for objections, satisfies any aspect of Rule 56's 10-day notice requirement that was not satisfied by the briefing opportunities afforded in connection with the motion to remand.  See also Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (*sua sponte* invocation of defense in Report and Recommendation satisfied due process). The dismissal of the RRWC should be without prejudice so that the judgment in this case will pose no bar to a future suit by the Port if a claim against the RRWC should later arise, ripen and become justiciable.

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Strike Affidavit (Doc. 21)** be **granted** and that the **Motion to Remand (Doc. 16)** be **denied**. It is further recommended that all claims against the Red River Waterway Commission be dismissed without prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of September, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE